UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANDY THOMAS ANDERSON,

       Petitioner,

v.                                     Case No. 2:09-cv-91
                                     HON. R. ALLAN EDGAR

CATHERINE BAUMAN,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Andy Thomas Anderson filed this petition for writ of habeas corpus challenging the validity of his July 19, 2006, state court convictions. Petitioner was convicted after a jury trial of second-degree murder, MCL 750.317. The trial court sentenced Petitioner as a habitual offender, second offence, MCL 769.10, to consecutive sentences of 25 to 75 years. Petitioner maintains that his conviction was obtained in violation of his federal rights.

The Michigan Court of Appeals stated:

> On October 3, 2005, inside Camp Cusino, a level one corrections facility in Alger County, David Green was killed by a single stab wound to the chest, which penetrated his heart. Witnesses testified that Anderson and Melton went to Green's room, armed with shanks, to avenge an earlier assault on Anderson and that Green was stabbed during the ensuing scuffle. The jury convicted Anderson of second-degree murder; the jury convicted Melton of first-degree murder.

Michigan Court of Appeals' Opinion, docket #30, at 1.

Following Petitioner's conviction and sentence, he filed a claim of appeal in the Michigan Court of Appeals. Petitioner's appointed appellate counsel filed a brief that raised the following issues:

I.     Petitioner's conviction should be overturned because there was insufficient credible evidence at trial to prove Petitioner's guilt.

II.    Petitioner's conviction must be reversed because it is against the great weight of the evidence.

III.   The trial court denied Petitioner a fair trial and his due process rights by keeping Petitioner shackled in the jury's view; allowing the joinder of the trials; failing to give a manslaughter instruction; allowing autopsy photographs into evidence; failing to grant Petitioner's motion for a directed verdict of acquittal; failing to give an accomplice jury instruction for prosecution witness Odom; and by allowing inconsistent verdicts to stand.

IV.    The prosecutor's actions denied Petitioner a fair trial and his due process rights for bringing out irrelevant and prejudicial information; denigrated the Petitioner and his defense; argued facts not in evidence; appealed to sympathy and civic duty; misstated the law; and expressed a personal belief in the facts of the case and vouched for witness.

V.     Trial counsel was constitutionally ineffective for failing to object at trial.

VI.    Petitioner was denied a fair trial and due process by the cumulative errors that occurred at trial.

In an order dated December 4, 2007, the Michigan Court of Appeals affirmed Petitioner's conviction.  Petitioner filed an application for leave to appeal to the Michigan Supreme Court, raising all six claims that were presented to the Court of Appeals.  By order entered April 28, 2008, Michigan Supreme Court denied Petitioner's application for leave to appeal because it was not persuaded that the questions presented should be reviewed.

Petitioner has now filed the instant petition, raising all six claims that he presented during his two rounds of appeals in the Michigan courts. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District

Courts.  The parties have briefed the issues and the matter is now ready for decision.  In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective.  Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute.  Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case

differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner first claims that there was insufficient credible evidence at trial to prove

his guilty.  The Michigan Court of Appeals rejected this claim as follows:

> The elements of second-degree murder are "(1) a death, (2) caused by an act of the defendant, (3) absent circumstances of justification, excuse, or mitigation, (4) done with an intent to kill, an intent to inflict great bodily harm, or an intent to create a very high risk of death with the knowledge that the act probably will cause death or great bodily harm." *People v. Bailey*, 451 Mich 657, 669; 549 NW2d 325 (1996), quoting *People v. Dykhouse*, 418 Mich 488, 508-509; 345 NW2d 150 (1994). A jury may infer the malice for second-degree murder "from evidence that a defendant intentionally set in motion a force likely to cause death or great bodily harm, as well as from the use of a deadly weapon." *Carines, supra* at 759.

> * * *

> Testimony presented at trial indicated that Anderson was furious with Green after Green assaulted him, that Anderson and Melton, armed with prison-fashioned knives referred to as "shanks," went to the wing in which Green was housed to avenge Green's assault on Anderson, that Anderson stabbed or attempted to stab Green, that Melton or Anderson stabbed Green in the chest, and that Anderson admitted to another inmate that he participated in an assault on Green. While certainly there was some conflict among the testimony offered by the witnesses to Green's murder, each and every witness placed Anderson in the middle of events as they transpired, as an armed participant in the assault on Green.

> Whether as a principal or an aider and abettor, the jury could properly hold Anderson responsible for the actions, along with the natural and probable consequences of those actions, including Green's death. *Robinson, supra* at 15. And, the jury was permitted to infer that Anderson had sufficient intent to warrant a conviction for second-degree murder from the nature of the assault and Anderson's role in it. *Carines, supra* at 760-761. Therefore, the jury's verdict was supported by sufficient evidence. For the same reasons, the trial court did not err in denying Anderson's motion for a directed verdict at the close of the prosecution's case. *People v. Gills*, 474 Mich 105, 113; 712 NW2d 419 (2006); *People v. Lemmon*, 456 Mich 625, 633-634; 576 NW2d 129 (1998); *People v. Allay*, 171 Mich App 602, 605; 430 NW2d 794 (1988).

Michigan Court of Appeals' Opinion, docket #30, at 3-4.

A federal court sitting in habeas corpus review of a state criminal trial is to determine whether there was sufficient evidence of the essential elements of the crime to justify any rational trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence is to be considered in the light most favorable to the prosecution. *Id*. Viewing the facts in the light most favorable to the prosecution, the trial testimony established that Petitioner was attempting to stab the victim when co-defendant Melton actually stabbed the victim and killed him. The evidence supports that Petitioner was guilty of second-degree murder at least as an aider and abettor to co-defendant Melton because they acted in concert to either kill or assault the victim with intent to do great bodily harm and intentionally set in motion the force likely to cause death or great bodily harm. The Michigan Court of Appeals' decision was not contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. In the opinion of the undersigned, Petitioner is not entitled to habeas relief on his first claim.

In his second claim Petitioner maintains that his conviction is against the great weight of the evidence. In rejecting this claim, the Michigan Court of Appeals ruled:

> From the evidence presented, the jury could have rationally concluded that defendants did not have the requisite intent for first-degree murder when they commenced the assault on Green, but that Anderson had the intent to do great bodily harm to Green as he was stabbing at him with a shank (warranting his conviction for second-degree murder). Those conclusions do not contradict the jury's apparent further conclusion that Melton formed the intent to kill Green during the assault and, after having sufficient time to deliberate, killed Green by stabbing him in the chest. Thus, the jury's verdicts are not necessarily inconsistent.
>
> Further, in *People v. Vaughn*, 409 Mich 463; 295 NW2d 354 (1980), our Supreme Court affirmed an inconsistent jury verdict finding the

defendant guilty of assault with a dangerous weapon and not guilty of felony-firearm. The Court explained that

> [j]uries are not held to any rules of logic nor are they required to explain their decisions. The ability to convict or acquit another individual of a crime is a grave responsibility and an awesome power. An element of this power is the jury's capacity for leniency. Since we are unable to know just how the jury reached their conclusion, whether the result of compassion or compromise, it is unrealistic to believe that a jury would intend that an acquittal on one count and conviction on another would serve as the reason for defendant's release. These considerations change when a case is tried by a judge sitting without a jury. But we feel that the mercy-dispensing power of the jury may serve to release a defendant from some of the consequences of his act without absolving him of all responsibility. [*Id*. at 466.]

> Similarly, the jury here was permitted to consider each defendant's individual circumstances and was required to consider separately each defendant's role in Green's murder. In so doing, the jury retained its power to afford a defendant leniency or dispense mercy by "releas[ing] a defendant from some of the consequences of his actions without absolving him of all responsibility." *Id*. For these reasons, we conclude that the trial court did not abuse its discretion in denying Anderson's post-trial motion for a new trial. *Lemmon, supra* at 648 n 27.

Michigan Court of Appeals' Opinion, docket #30, at 4-5.

It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). A habeas petition must "state facts that point to a 'real possibility of constitutional error.' " *Blackledge v. Allison*, 431 U.S. 63, 75 (1977). Therefore, Petitioner's state-law claim is not a basis for habeas relief. Moreover, the Supreme Court has never recognized a prisoner's constitutional right to a new trial because the verdict was against the great weight of the evidence.

Petitioner's argument concerning the weight of the evidence therefore fails to raise a meritorious federal claim.

In his third and fourth claims, Petitioner raises multiple claims as to fair trial issue. Petitioner alleges that the trial court denied him a fair trial and his due process rights by keeping Petitioner shackled in the jury's view. To justify reversal based on the presence of shackles or restraints during trial, a petitioner is obligated to show prejudice when he claims that the jury observed him in shackles during trial. *United States v. Mayes*, 158 F.3d 1215, 1225 (11th Cir. 1998); *United States v. Waldon*, 206 F.3d 597, 607 (6th Cir. 2000) (Juror's observation of defendant in shackles did not require reversal where defendant could show no actual prejudice). In this case, Petitioner cannot show that prejudice resulted from any juror viewing him in shackles. The jury was aware that Petitioner and the defense witnesses were prisoners at the time of the alleged crime and at the time of trial. In the opinion of the undersigned, Petitioner cannot show that the Michigan Court of Appeals' decision was unreasonable.

Petitioner claims that the trial court denied him a fair trial by allowing the prosecutor to join the prosecutions against Petitioner and co-defendant in a joint trial. Petitioner alleges that the trial court failed to grant him a separate trial from co-defendant Melon. Petitioner argues that their defenses were antagonistic and that Melon would testify in a manner exculpating himself and inculpating Petitioner. The Michigan Court of Appeals rejected this claim because "Anderson fail[s] to demonstrate what trial rights were violated' by the joinder or how the jury's determination was unreliable. 'There is no indication that either defendant was restricted in his presentation of a defense,' or that the jury was 'exposed to evidence that would have been barred from their consideration in separate trials.' [*People v. Hana*, 447 Mich. 325, 360 (1994)]." Michigan Court of Appeals' Opinion, docket #30, at 6-7.

The Supreme Court has recognized that states have significant interests in conducting joint trials. See *Buchanan v. Kentucky*, 483 U.S. 402, 417-19 (1987). The Supreme Court has not held that a defendant in a criminal case has a constitutional right to a separate trial on each of the charges against him. See *Rodriguez v. Jones*, 625 F.Supp.2d 552, 560-61 (E.D.Mich.2009). Rather, the United States Supreme Court has stated that "consolidation in one lawsuit of all issues rising out of a single transaction or occurrence best promotes justice, economy, and convenience." *Ashe v. Swenson*, 397 U.S. 436, 454 (1970) (Brennan, J., concurring). The Supreme Court has also held that "an error involving misjoinder 'affects substantial rights' and requires reversal only if the misjoinder results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *United States v. Lane*, 474 U.S. 438, 449 (1986) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). For habeas review, the question is not whether the joinder of charges or the refusal to sever counts for separate trials violated a state procedural rule, but it is whether the petitioner was denied due process of law under the Fourteenth Amendment. See *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir.2007) (citing *Corbett v. Bordenkircher*, 615 F.2d 722, 724 (6th Cir.1980)). "Improper joinder does not, in itself, violate the Constitution. Rather, misjoinder [constitutes] a constitutional violation only if it results in prejudice so great as to deny a defendant his ... right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n. 8 (1986); *Davis*, 475 F.3d at 777 (quoting *Lane*). The Sixth Circuit explained:

> Without question, a risk of undue prejudice exists whenever joinder of counts permits introduction of evidence of other crimes that would otherwise be inadmissible. By allowing joinder of offenses, the possibility exists that a jury may use the evidence of one of the charged crimes to infer a general criminal disposition by the defendant; the jury also may confuse or cumulate the evidence of the various crimes charges. The prejudice that [the petitioner] must demonstrate, however, in order to justify a grant of a writ of habeas corpus is actual prejudice, not merely the potential for prejudice.

*Davis*, 475 F.3d at 777 (internal citations omitted).  A misjoinder results in actual prejudice when it "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Lane*, 474 U.S. at 449 (citations omitted); see also *United States v. Chavis*, 296 F.3d 450, 461 (6th Cir.2002). In applying this standard, the Court considers factors such as whether there is overwhelming evidence of guilt, whether limiting instructions were given to the jury, and whether the evidence pertaining to the misjoined counts would have been admissible in separate trials absent joinder. *Lane*, 474 U.S. at 450; *Chavis*, 296 F.3d at 461.

   As outline above, most of the evidence and testimony introduced at trial would have been admissible even if Petitioner had been tried alone.  Petitioner cannot meet the standard set forth in *Lane*.  Therefore, the Michigan appellate court's analysis comported with United States Supreme Court precedent and Petitioner is not entitled to relief on this claim.

   Petitioner claims that the trial court failed to give the jury a manslaughter instruction. Respondent contends that this claim is procedurally defaulted because Petitioner did not contemporaneously raise it at trial court.  Answer in Opposition to Petition for Writ of Habeas Corpus, docket #10, at 7.  With respect to the portion of the claim that Respondent contends is procedurally defaulted, federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85-87(1977). Such a procedural default occurs when a petitioner fails to comply with a state procedural rule, the rule is relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir.2005). A procedural default may be excused where the petitioner demonstrates cause and prejudice for his failure to comply with the state procedural rule, or when a petitioner establishes that failing to review the claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Combs*

*v. Coyle*, 205 F.3d 269, 274 (6th Cir.2000). To demonstrate that a "fundamental miscarriage of justice" would occur absent review of a petitioner's claim, the petitioner must assert a credible claim of actual innocence that is supported by reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 315-16 (1995).

The Michigan Court of Appeals reviewed this claim for plain error and found none.

The Michigan Court of Appeals held:

> Whether an offense is a lesser-included offense presents a question of law that this Court reviews de novo. *People v. Nickens*, 470 Mich 622, 625-626; 685 NW2d 657 (2004); *People v. Brown*, 267 Mich App 141, 145; 703 NW2d 230 (2005). Jury instructions on necessarily included lesser offenses are permitted only in the circumstance where the charged greater offense requires a jury to find a disputed factual element that is not part of the lesser-included offense and a rational view of the evidence would support such a finding. *People v. Cornell*, 466 Mich 335, 357, 359; 646 NW2d 127 (2002). Second-degree murder is a necessarily included lesser offense of first-degree murder; the two offenses are differentiated only by the element of intent. *Id*. at 358 n 13. Thus, consideration of second-degree murder will be proper in a first-degree murder case whenever-and only whenever-the intent element is disputed; where intent is not disputed, however, such consideration is not permissible. *Id*.

> Anderson asserts that, because the prosecutor's theory was that he aided and abetted Melton in Green's murder, and because Melton was convicted of first-degree murder, no rational view of the evidence supported a second-degree murder instruction. However, considering the evidence presented, the jury could well have concluded that Melton and Anderson assaulted Green without the premeditation and deliberation necessary for first-degree murder, and the jury could also have concluded that defendants intentionally set in motion a force likely to cause death or great bodily harm with sufficient malice to warrant a conviction for second-degree murder. *Carines, supra* at 759. Thus, an instruction on second-degree murder as a lesser offense of first-degree murder was warranted by a rational view of the evidence presented at trial.

> However, contrary to Anderson's assertions, a rational view of the evidence did not warrant manslaughter instructions. Like

- 11 -

second-degree murder, both voluntary manslaughter and involuntary manslaughter are necessarily included lesser offenses of murder, distinguished only by the element of malice. *People v. Mendoza*, 468 Mich 527, 540-541; 664 NW2d 685 (2003). Consequently, when a defendant is charged with murder, an instruction for voluntary manslaughter must be given if a rational view of the evidence supports a conclusion that a defendant killed the victim in the heat of passion caused by adequate provocation, and without a lapse of time during which a reasonable person in defendant's position could have controlled that passion. Id. at 535. And, an instruction on involuntary manslaughter is appropriate when a rational view of the evidence would support a conclusion that a defendant caused a death, unintentionally and negligently. *Id*. at 540-541.

Anderson never argued that he acted without the requisite malice. Instead, he asserted, through the arguments of his counsel, that he was unarmed and merely assaulted Green with his fists, without any knowledge that Melton might be armed or might have any intention of harming Green. Thus, there was no basis for concluding that the assault on Green was mitigated by "hot blood" or adequate provocation. Therefore, the trial court did not plainly err in not sua sponte instructing the jury on manslaughter as a lesser-included offense of murder. *Mendoza, supra* at 547-548; *Gillis, supra* at 138-139.

Michigan Court of Appeals' Opinion, docket #30, at 6-7.

It is well established that the Michigan Court of Appeals' application of plain error review constitutes the invocation of an independent and adequate procedural rule that bars federal review of the merits of his claim. *Fleming v. Metrish*, 556 F.3d 520, 524 (6th Cir.2009). Therefore, Petitioner is entitled to review of his claims on the merits only if he can demonstrate "cause and prejudice," or that he is actually innocent. Petitioner has not shown cause for the failure to request a manslaughter instruction.  Petitioner also has not demonstrated that manifest injustice would result because he has not made a colorable claim of innocence; he has not shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent.  *Schlup v. Delo*, 513 U.S. 298, 322 (1995) (citing *Murray*, 477 U.S. at 495).  This requires a showing that in light of the

new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Coleman*, 244 F.3d at 540 (citing *Schlup*, 513 U.S. at 329). Accordingly, I conclude that Petitioner's claim is procedurally defaulted.

Petitioner also alleges that the trial court erred in declining to give an accomplice instruction regarding Odom's testimony. The Michigan Court of Appeals denied this claim, explaining:

> An instruction is only required if supported by the evidence. *People v. Ho*, 231 Mich App 178, 189; 585 NW2d 357 (1998). We review for an abuse of discretion the trial court's determination that a requested jury instruction does not apply to the facts of this case. *Gillis, supra.* An abuse of discretion occurs when the result is outside the principled range of outcomes. *People v. Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

> While there was testimony possibly implicating another inmate, Darnell Norris, in the assault on Green, there was no testimony or evidence tending to establish that Odom was involved in the assault other than in an extremely limited fashion, involuntarily and after the fact. We conclude that the trial court did not abuse its discretion in determining that an accomplice instruction was not applicable under the facts of this case. *Babcock, supra; Ho, supra.*

> Anderson argues that the trial court erred in failing to instruct the jury to disregard any allegations of dishonesty or thievery by Anderson, as he requested. Even assuming that this was error, "[m]ere error alone in instructing the jury is insufficient to set aside a criminal conviction. Instead a defendant must establish that the erroneous instruction resulted in a 'miscarriage of justice.'" *People v. Shaefer*, 473 Mich 418, 441-442; 703 NW2d 774 (2005). This Court will find that there has been a miscarriage of justice only if, after an examination of the entire case, it affirmatively appears that it is more probable than not that the error was outcome determinative. *Gillis, supra; People v. Rodriguez*, 463 Mich 466, 473-474; 620 NW2d 13 (2000). Considering the overwhelming evidence against him, we do not find that a failure to instruct the jury to disregard any allegations that Anderson engaged in thievery affected the outcome of the trial.

Michigan Court of Appeals' Opinion, docket #30, at 8.

In order to show a constitutional violation, petitioner must demonstrate that the instruction violated due process. *Henderson v. Kibbe*, 431 U.S. 145, 153 (1977).

> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," . . . not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned,'" . . . .

431 U.S. at 154. In the opinion of the undersigned, the evidence presented at trial, taken in the light most favorable to the prosecution, was sufficient to justify the instructions given by the court. Moreover, the Michigan Court of Appeals' decision was reasonable.

Petitioner asserts that the trial court abused its discretion in admitting autopsy photographs of the victim. The Michigan Court of Appeals disagreed and ruled:

> The decision whether to admit evidence is discretionary with the trial court and will not be reversed on appeal absent an abuse of discretion. *People v. Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). An abuse of discretion occurs where an unprejudiced person would say that there was no basis for the trial court's ruling. *Id.* Generally speaking, evidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the case more or less probable than it would be without the evidence. MRE 401; *People v. Crawford*, 458 Mich 376, 388; 582 NW2d 785 (1998). However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *Aldrich, supra* at 114. Unfair prejudice is "an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one." *People v. Vasher*, 449 Mich 494, 501; 537 NW2d 168 (1995). As our Supreme Court explained in *People v. Mills*, 450 Mich 61, 76; 537 NW2d 909 (1995), *mod on other grounds* 450 Mich 1212 (1995):
>
> > The decision to admit or exclude photographs is within the sole discretion of the trial court. Photographs are not excludable simply because a witness can orally testify about information contained

- 14 -

in the photographs. Photographs may also be used to corroborate a witness' testimony. Gruesomeness alone need not cause exclusion. The proper inquiry is always whether the probative value of the photographs is substantially outweighed by unfair prejudice. [Citations omitted.]

While somewhat unpleasant, the photographs at issue here are neither gruesome nor horrific, and there is nothing inflammatory about them. The pictures are factual representations of the injuries suffered by Green, presented in a clinical setting. They illustrate the pathologist's testimony regarding the trajectory of the fatal injury, thereby allowing the jury to determine whether the injury is consistent with the version of events testified to by witnesses and with the prosecution's theory of the case. Anderson has not shown that the probative value of these pictures is substantially outweighed by any danger of unfair prejudice. *Mills, supra* at 79-80. Therefore, the trial court did not abuse its discretion by admitting them into evidence.

Michigan Court of Appeals' Opinion, docket #30, at 5-6.

Petitioner cannot prevail on this claim because it is well-established that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Mich. Dep't of Corr*., 4 F.3d 1348, 1354 (6th Cir.1993); see also *Olsen v. McFaul*, 843 F.2d 918, 933 (6th Cir.1988) (such claims are almost always rejected as grounds for granting a writ of habeas corpus). Instead, questions concerning the admissibility of evidence, as well as its probative or prejudicial value, are properly left to the sound discretion of the trial court. *Oliphant v. Koehler*, 594 F.2d 547, 555 (6th Cir.1979). For an evidentiary ruling to possibly violate due process, it must be so egregious that it results in a denial of fundamental fairness. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.2003). The use of autopsy photographs during Petitioner's trial does not rise to that level, and the admission of the evidence did not offend the Constitution when there is some legitimate evidentiary purpose for demonstrating

- 15 -

the nature of the injuries. *See Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002) (holding that "although the photographs were gruesome, they were highly probative").   In the opinion of the undersigned, Petitioner is not entitled to habeas relief on the admission of evidence claim because it does not raise a constitutional issue and the Michigan Court of Appeals' decision was not unreasonable.

Petitioner argues that his verdict and co-defendant Melton's verdict were inconsistent because the jury found him not guilty of aiding and abetting first-degree murder by Melton, but found him guilty of aiding and abetting second-degree murder.  Petitioner's claim of an inconsistent verdict is  not cognizable on federal habeas review because it involves a question of state law. Petitioner cannot seek federal habeas relief based upon his disagreement with the state appellate court's determination of the elements of a crime defined in a state statute. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("[a] federal court may not issue a writ on the basis of a perceived error of state law"). The United States Supreme Court "repeatedly has held that the state courts are the ultimate expositors of state law" in federal habeas proceedings. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  Moreover, the Michigan Court of Appeals rejected this claim.  Petitioner has not shown that the Michigan Court of Appeals' decision was unreasonable.  Accordingly, petitioner's claim of an inconsistent verdict should be denied.

Petitioner next argues that he was denied a fair trial because of repeated instances of prosecutorial misconduct during trial by bringing out irrelevant and prejudicial information, denigrating the Petitioner and his defense, arguing facts not in evidence, appealing to sympathy and civic duty, misstating the law, expressing a personal belief in the facts of the case, and vouching for a witness. The Michigan Court of Appeals reviewed the claims of prosecutorial misconduct and found none, holding:

- 16 -

The test for prosecutorial misconduct is whether, examining the prosecutor's statements in context, they deprived defendant of a fair and impartial trial. *People v. Hill*, 257 Mich App 126, 135; 667 NW2d 78 (2003). Claims of prosecutorial misconduct are considered on a case-by-case basis and the comments of the prosecutor are to be considered as a whole and evaluated in light of the defense arguments and the evidence admitted at trial. *People v. Rodriguez*, 251 Mich App 10, 30; 650 NW2d 96 (2002). The prosecutor may not make a statement of fact to the jury that is unsupported by the evidence. *People v. Stanaway*, 446 Mich 643, 686; 521 NW2d 557 (1994); *People v. Ackerman*, 257 Mich App 434, 450; 669 NW2d 818 (2003). However, she is free to argue the evidence and all reasonable inferences arising from it as they relate to her theory of the case. *People v. Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995); *Ackerman, supra*. A prosecutor's good-faith effort to admit evidence does not constitute misconduct. *People v. Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007).

Anderson first argues that the prosecutor "brought out irrelevant and prejudicial information" by asserting that the jury could infer that all witnesses testified consistently with their prior statements unless otherwise established at trial, by asking a detective when he developed Anderson and Melton as suspects, by stating that the other inmates considered Anderson to be a thief, by noting witness opinion that Green's death was connected to the earlier assault by Green on Anderson, by mentioning that an inmate was injured by Anderson at the conclusion of the earlier fight, by eliciting testimony about and commenting on threats to the inmate witnesses, and by inquiring into the reasons the inmate witnesses chose to come forward.

Reviewing the prosecutor's questions in context, we find that each of the complained-of instances either constituted a good faith attempt to introduce evidence that was relevant to the investigation into Green's murder or to the motivation of persons involved, or merely addressed background events to "set the stage" for the prosecution's case against defendants.

Anderson next argues that the prosecutor improperly denigrated Melton. Certainly, a prosecutor may not denigrate the defense or a defendant. *Bahoda, supra* at 283. However, a prosecutor may comment on the evidence presented and may argue from the evidence that a witness, including the defendant, is not worthy of belief. *Id*. at 282-283; *People v. Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997); *People v. Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996).

- 17 -

During her closing argument, the prosecutor commented that Melton's testimony "has evolved over time and is tainted by his motive and opportunity and ability to fabricate," and that "[t]he story that's been manufactured though really just fails the fall-down-laughing test." The prosecutor continued by commenting on the specifics of Melton's testimony and offering reasons why, considering the other evidence presented, it was not credible. *Bahoda, supra; Howard, supra*. This argument was permissible commentary on why Melton was not worthy of belief. Further, even if improper, the prosecutor's comments denigrated Melton; they did not reflect in any way on Anderson or his defense. Therefore, there is no basis for reversal of Anderson's conviction on the basis of her comments about the credibility of Melton's testimony.

Anderson also argues that the prosecutor argued facts not in evidence. We conclude, however, that each of the complained-of instances were permissible comments on the evidence or the inferences fairly and reasonably drawn from the evidence as pertinent to the prosecutor's theory of the case.

Further, we note that the trial court instructed the jury on more than one occasion that the attorneys' statements and arguments were not evidence and should not be considered by the jury as evidence. These instructions were sufficient to dispel any possible prejudice that may have resulted from the prosecutor's comments. *Bahoda, supra* at 281; *People v. Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004); *People v. Abraham*, 256 Mich App 265, 276; 662 NW2d 836 (2003); *People v. Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001).

Anderson next asserts that the prosecutor improperly appealed to the jury's sympathy or civic duty. We disagree.

A prosecutor may not appeal to the jury to sympathize with the victim. *People v. Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001); *People v. Wise*, 134 Mich App 82, 104; 351 NW2d 255 (1984). Nor may a prosecutor urge the jurors to convict the defendant as part of their civic duty. *Bahoda, supra* at 282; *Abraham, supra* at 273. During closing argument the prosecutor noted that Green's life was as valuable as anyone's life and stated that a guilty verdict was the only fair verdict to Green, to the inmate witnesses, and to defendants. However, the prosecutor did not encourage the jurors to suspend their own judgment out of sympathy for the victim or a sense of civic duty and did not inject issues into the trial broader than the defendants' guilt or innocence. The prosecutor clearly indicated that

she believed that guilty verdicts were consistent with the law and facts. This argument was not improper.

Anderson also asserts that the prosecutor misstated the law during her closing argument. Even were we to agree, the trial court specifically instructed the jurors to disregard any such misstatement and jurors are presumed to follow their instructions. *People v. Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

Anderson also asserts that the prosecutor improperly vouched for the credibility of the inmate witnesses and improperly expressed her personal opinion that Odom was not an accessory after the fact. Certainly, a prosecutor may not vouch for the credibility of a witness by conveying that she has some special knowledge that the witness is testifying truthfully. *People v. Knapp*, 244 Mich App 361, 382; 624 NW2d 227 (2001). However, a prosecutor is free to argue from the facts that a witness is credible. *Howard, supra* at 548. Here, the prosecutor did not imply that she had some special knowledge that the inmate witnesses were testifying truthfully. Rather, she pointed out circumstances surrounding that testimony to argue that they were credible. Additionally, the trial court instructed the jurors that they were the sole judges of the witnesses' credibility, and that the lawyers' comments are not evidence. These instructions were sufficient to dispel any possible prejudice that may have resulted from the prosecutor's comments. *Abraham, supra* at 276; *Long, supra*; *Knapp, supra* at 382-383.

Further, the prosecutor's statements that there was no evidence that Odom was involved in Green's murder and that Odom was "never chargeable as an accessory after the fact, never considered a suspect," do not express a personal belief in Odom's innocence of a criminal offense. Rather, the prosecutor permissibly argued that there was no evidence, nor any reasonable inference from the evidence, to suggest that Odom was part of a plan to murder Green, and thus, that the defense assertions that such involvement offered a motive to lie was without basis in the evidence.

Finally, both Anderson and Melton argue that the prosecutor committed misconduct by repeatedly eliciting unfairly prejudicial testimony about Melton's membership in the Moorish Americans or "Mobites," a religious group of Islamic faith that numerous witnesses testified operated as a gang in the prison system. Anderson asserts that this testimony was irrelevant and prejudicial. Melton argues that the prosecutor elicited this testimony to attack Melton's credibility and to arouse the prejudice of the jurors against Melton's beliefs so as to obtain a conviction on improper grounds.

A prosecutor is not permitted to introduce evidence relating to the religious beliefs of a witness to attack the witness's credibility. MRE 610; *People v. Leshaj*, 249 Mich App 417, 420-421; 641 NW2d (2002). Thus, "questioning a witness with regard to the subject of his religious beliefs or opinion is forbidden during a criminal proceeding ... Likewise, questioning a witness to explore another individual's religious opinions and beliefs is equally offensive." *People v. Leonard*, 224 Mich App 569, 594-595; 569 NW2d 663 (1997).

Here, the prosecutor did not question Melton about his religious beliefs, question other witnesses about Melton's religious beliefs, or in any way suggest that those beliefs rendered Melton less credible. In fact, the prosecutor made no inquiry whatsoever into the nature, substance, or effect of Melton's religious beliefs or the beliefs espoused by members of the Mobites. Rather, she merely sought to establish that Melton was a member of the Mobites and that the Mobites operated as a gang at Camp Cusino, protecting members and others from conflict, so as to explain Melton's motive in accompanying Anderson to avenge Green's earlier assault on Anderson, which did not involve Melton in any way, and to explain why some inmates declined to cooperate with detectives investigating Green's murder. Reversal is not warranted where the testimony elicited does not "reveal a defendant's opinion or belief regarding the subject of religion." *Id*. at 595. And, a prosecutor's good faith effort to admit evidence does not constitute prosecutorial misconduct. *Dobek, supra* at 70.

Further, because there was no testimony linking Anderson to the "Mobites," there is no basis for any assertion that evidence about its activity was prejudicial to him.

Michigan Court of Appeals' Opinion, docket #30, at 9-12.

On habeas review, claims of prosecutorial misconduct are reviewed deferentially. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). To be cognizable, the misconduct must have " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Id*. (citation omitted). Even if the prosecutor's conduct was improper or even "universally condemned," id., relief can be provided only if the statements were so flagrant as to render the entire trial fundamentally unfair. Once the statement is found improper, four factors are considered in determining whether the impropriety is flagrant: (1) the likelihood that the remarks would mislead

- 20 -

the jury or prejudice the accused, (2) whether the remarks were isolated or extensive, (3) whether the remarks were deliberately or accidentally presented to the jury, and (4) whether other evidence against the defendant was substantial. See *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir.2000). Under the AEDPA, this bar is heightened by the deference given to the court of appeals's determination of Petitioner's prosecutorial-misconduct claims. *See Macias v. Makowski*, 291 F.3d 447, 453-54 (6th Cir.2002) ("If this court were hearing the case on direct appeal, we might have concluded that the prosecutor's comments violated *Macias*'s due process rights. But this case is before us on a petition for a writ of habeas corpus. So the relevant question is not whether the state court's decision was wrong, but whether it was an unreasonable application of clearly established federal law.").  The Michigan Court of Appeals's decision regarding Petitioner's prosecutorial-misconduct claims was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. In the opinion of the undersigned, Petitioner is not entitled to habeas relief on this claim.

Petitioner claims that he was denied the effective assistance of counsel based on his trial counsel's failure to object to any of the previously raised claims on appeal in the Michigan courts.  The Michigan Court of Appeals found that "the issues raised on appeal lack merit. Therefore, Anderson cannot establish that his counsel was ineffective for failing to make futile objections or assert meritless positions during trial."  Michigan Court of Appeals' Opinion, docket #30, at 14.

In order to prevail on a claim of ineffective assistance of counsel, petitioner must show that counsel's errors were so serious that he was not functioning as counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998); *Bruner v. Perini*, 875 F.2d 531, 535 (6th Cir.), cert. denied, 493 U.S. 938, 110 S. Ct. 334 (1989) (citing *Strickland v. Washington*, 466 U.S. 668, 688-96, 104 S. Ct. 2052, 2065, 69,

- 21 -

80 L. Ed. 2d 647 (1984)).

There has been ineffective assistance of counsel where an attorney's performance is so deficient as to prejudice the defense and render the trial unfair and the result unreliable. *Wong*, 142 F.3d at 319; Austin v. Bell, 126 F.3d 843, 847 (6th Cir. 1997), cert. denied, 118 S. Ct. 1547 (1998). Even if a court determines that counsel's performance was outside the wide range of professionally competent assistance, the petitioner is not entitled to relief if his counsel's error had no effect on the judgment. *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999). Rather, a petitioner must show that the probability that the outcome of the case would have been different but for counsel's unprofessional errors is sufficient to undermine confidence in the result. *Wong*, 142 F.3d at 319; *Austin*, 126 F.2d at 848. "The performance and prejudice components of the *Strickland* test are mixed questions of law and fact." *Austin*, 126 F.2d at 848.

The court's review of defense counsel's performance is highly deferential, and defense counsel is presumed to have rendered adequate assistance by exercising reasonable professional judgment and sound trial strategy. *Wong*, 142 F.3d at 319; *Austin*, 126 F.3d at 848. The petitioner must overcome the presumption that, under the circumstances, the challenged actions might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999).

In this instant case, Petitioner has failed to prove that trial counsel's errors were so severe as to constitute constitutional ineffectiveness. Petitioner has not shown that but for his trial counsel's failure to object to the prosecutor's questions and closing statement, there was a reasonable probability that the result at trial would have been different. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result

- 22 -

in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner lastly asks the court to grant him habeas relief based on the cumulative errors that occurred at trial. In the Sixth Circuit, "cumulative errors claims are not cognizable on habeas because the Supreme Court has not spoken on this issue." *Cross v. Stovall*, 238 Fed. Appx. 32, 41 (6th Cir.2007) (quoting *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir.2006) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir.2005))). Petitioner is therefore not entitled to habeas relief on the grounds of cumulative error.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the

- 23 -

constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Petitioner has failed to establish that there was insufficient evidence presented at trial to support his conviction. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  July 25, 2011